**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. __18-20538 CR-MORENO__

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 1956(h)
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

MAGISTRATE JUDGE
LOUIS

**UNITED STATES OF AMERICA**

**vs.**

**ADEMOLA O. ADEBAYO,**

Defendant.
_____/

FILED by ___ D.C.

JUN 2 1 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.  The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.  Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare programs covering different types of benefits were separated into different program "parts."  Part D of Medicare (the "Medicare Part D Program") subsidized the costs of

prescription drugs for Medicare beneficiaries in the United States. The Medicare Part D Program was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, and went into effect on January 1, 2006.

3.      In order to receive Part D benefits, a beneficiary enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

4.      A pharmacy could participate in Part D by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers ("PBMs"). A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the plan or to a PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

5.      A pharmacy could also submit claims to a Medicare drug plan to whose network the pharmacy did not belong. Submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the drug plan sponsor.

6.      Medicare, through CMS, compensated the Medicare drug plan sponsors. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where

a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

7.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that affected commerce, and as that term is used in Title 18, United States Code, Section 1347.

8.      Medicare was a "health care benefit program," as defined by Title 42, United States Code, Section 1320a-7b(t), that affected commerce, and as that term was used in Title 42, United States Code, Section 1320a-7b(b).

9.      Express Scripts Incorporated ("Express Scripts") and Caremark LLC d/b/a CVS/Caremark ("CVS/Caremark") were Medicare drug plan sponsors, and were "health care benefit programs," as defined by Title 18, United States Code, Section 24(b).

### The TRICARE Program

10.     TRICARE was a health care program of the United States Department of Defense ("DOD") Military Health System that provided coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.  Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries.  The Defense Health Agency ("DHA"), an agency of the DOD, was the military entity responsible for overseeing and administering the TRICARE program.

11.     TRICARE was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that affected commerce, and as that term was used in Title 18, United States Code, Section 1347.

12.     TRICARE was a "health care benefit program," as defined by Title 42, United States Code, Section 1320a-7b(t), that affected commerce, and as that term is used in Title 42, United States Code, Section 1320a-7b(b).

13.     TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, that were medically necessary and prescribed by a licensed medical professional.  Express Scripts administered TRICARE's prescription drug benefits.

14.     TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies.  If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy directly or through a Pharmacy Services Administrative Organization ("PSAO").  To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

### Privately Insured Drug Plans

15.     Commercial insurance companies, employers, and private entities offered drug plans which were administered and operated by PBMs.  A beneficiary in a privately insured drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

16.     A pharmacy could participate in a privately insured drug plan by entering an agreement with one or more PBMs acting on behalf of a privately insured plan.  When a privately insured beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim to a PBM that represented the beneficiary's privately insured drug plan. The plan or PBM determined

whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

17.     Express Scripts, OptumRX, Inc. ("OptumRX"), CVS/Caremark, MedImpact Healthcare Systems, Inc. ("MedImpact"), and Catamaran Corporation ("Catamaran") were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that affected commerce, and as that term was used in Title 18, United States Code, Section 1347.

### Compounded Drugs Generally

18.     In general, "compounding" was a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combined, mixed, or altered ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient.  Compounded drugs were not approved by the U.S. Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.   The Florida State Board of Pharmacy regulated the practice of compounding in the State of Florida.

19.     Compounded drugs could be prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient.  For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. Compounded drugs could be prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.

## The Defendant, Co-conspirators, and Related Companies

20.    A to Z Pharmacy, Inc. ("A to Z Pharmacy") was a Florida corporation that had its principal place of business at 9039 Little Road, New Port Richey, Pasco County, Florida, and purportedly provided prescription drugs to patients.

21.    Havana Pharmacy and Discount, Inc. ("Havana Pharmacy") was a Florida corporation that had its principal place of business at 1001 SW 8th Street, Miami-Dade County, Florida, and purportedly provided prescription drugs to patients.

22.    Jaimy Pharmacy Inc. ("Jaimy Pharmacy") was a Florida corporation that had its principal place of business at 5080 E. 4th Avenue, Suite B, Hialeah, Miami-Dade County, Florida, and purportedly provided prescription drugs to patients.

23.    Medplus Pharmacy Corp. ("Medplus/New Life Pharmacy") was a Florida corporation that had its principal place of business at 13016 SW 120th Street, Miami-Dade County, Florida, purportedly provided prescription drugs to patients, and also did business as New Life Pharmacy.

24.    Metropolitan Pharmacy Corp. ("Metropolitan Pharmacy") was a Florida corporation that had its principal place of business at 3253 NW 7th Street, Miami-Dade County, Florida, and purportedly provided prescription drugs to patients.

25.    Pharmachoice, Inc. ("Pharmachoice") was a Florida corporation that had its principal place of business at 6045 SW 8th Street, Miami-Dade County, Florida, and purportedly provided prescription drugs to patients.

26.    Prestige Pharmacy and Medical Supplies, Inc. ("Prestige Pharmacy") was a Florida corporation that had its principal place of business at 2150 West 76th Street, Suite 106, Hialeah, Miami-Dade County, Florida, and purportedly provided prescription drugs to patients.  Prestige

Pharmacy, Havana Pharmacy, Jaimy Pharmacy, Medplus/New Life Pharmacy, Metropolitan Pharmacy and Pharmachoice, are hereinafter referred to as the "Front Pharmacies."

27.     Tinto, Inc. ("Tinto") was a Florida corporation that had its principal place of business at 18132 Patterson Road, Odessa, Hillsborough County, Florida.

28.     Nicholas A. Borgesano, Jr. was a pharmacy technician registered in the State of Florida.  He was also the owner of A to Z Pharmacy, Medplus/New Life Pharmacy, Metropolitan Pharmacy, Havana Pharmacy, Jaimy Pharmacy, Pharmacoice, and Prestige Pharmacy.

29.     **ADEMOLA O. ADEBAYO** was a pharmacist licensed in the State of Florida and the pharmacist at A to Z Pharmacy.  He was also the owner of Tinto, and the nominee owner of Havana Pharmacy.

30.     Edwin Patrick Young was a pharmacist licensed in the State of Florida.  He was the nominee owner of Jaimy Pharmacy.

31.     Joseph Degregorio was an employee of A to Z Pharmacy and the nominee owner of Pharmachoice and Prestige Pharmacy.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     Beginning in or around October 2012, through in or around December 2015, in the Southern District of Florida, and elsewhere, the defendant,

**ADEMOLA O. ADEBAYO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate and agree with Nicholas A. Borgesano, Jr., Edwin Patrick Young,

Joseph Degregorio and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.      to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, TRICARE, and private insurance administered by PBMs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery and payment for health care benefits, items and services, in violation Title 18, United States Code, Section 1347; and

b.      to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writing, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## **Purpose of the Conspiracy**

3.      It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare, TRICARE, and private insurers for compound prescription medications that were medically unnecessary, not eligible for reimbursement, and not provided as claimed; (b) concealing the submission of such false and fraudulent claims;   (c)

8

concealing the receipt and transfer of proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators.

<u>**Manner and Means of the Conspiracy**</u>

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose and objects of the conspiracy included, among others, the following:

4.      Nicholas A. Borgesano, Jr., would obtain and maintain control of and operate A to Z Pharmacy and the Front Pharmacies, which purported to provide compound prescription medications.

5.      **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., Edwin Patrick Young, Joseph Degregorio, and their co-conspirators would submit and cause the submission of false and fraudulent reimbursement claims on behalf of A to Z Pharmacy for compound medications purportedly provided to Medicare beneficiaries, TRICARE beneficiaries, and privately insured beneficiaries that had not, in fact, been provided as claimed, had not been legitimately prescribed, and had not been legitimately compounded, including through the use of wire communications in interstate commerce, and would receive payment for such claims.

6.      **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., and their co-conspirators would pay and cause to be paid kickbacks and bribes in exchange for prescriptions and patient information that would be used to submit and cause the submission of false and fraudulent reimbursement claims on behalf of A to Z Pharmacy for compounded medications.

7.      **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., Edwin Patrick Young, Joseph Degregorio, and their co-conspirators would unlawfully use unique identifying information of Medicare, TRICARE, and/or privately insured beneficiaries to submit and cause the submission

of false and fraudulent reimbursement claims on behalf of A to Z Pharmacy for prescription compound medications.

8.      **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., Edwin Patrick Young, Joseph Degregorio, and their co-conspirators would submit and cause the submission of claims on behalf of A to Z Pharmacy for reimbursement for prescription compound medications falsely and fraudulently representing that such drugs contained certain pharmaceutical ingredients when they did not.

9.      **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., and their co-conspirators would not collect copayments on behalf of A to Z Pharmacy from recipients of compound prescription drugs in order to conceal the fraud scheme.

10.      **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., Edwin Patrick Young, Joseph Degregorio, would perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of, and the acts done in furtherance of, said conspiracy.

11.      After PBMs terminated A to Z Pharmacy's ability to submit and be paid reimbursement for claims for compound medications, Nicholas A. Borgesano, Jr. purchased the Front Pharmacies and obtained and maintained control of bank accounts opened in the name of the Front Pharmacies.   **ADEMOLA O. ADOBAYO**, Edwin Patrick Young, and Joseph Degregorio hid Nicholas A. Borgesano, Jr.'s ownership of the Front Pharmacies by signing documentation, including incorporation records, central fill agreements, enrollment records and provider agreements, making it appear that they, rather than Nicholas A. Borgesano, Jr., owned the Front Pharmacies.

12.      **ADEMOLA O. ADOBAYO** signed documents, including incorporation records, central fill agreements and a provider agreement with Express Scripts, identifying himself as the

owner of Havana Pharmacy, when, in fact, Nicholas A. Borgesano, Jr. was the true owner of Havana Pharmacy.

13.    **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., Edwin Patrick Young, Joseph Degregorio, and their co-conspirators used the Front Pharmacies to continue the conspiracy and fraud scheme, submitting and causing the submission of false and fraudulent reimbursement claims on behalf of the Front Pharmacies for compound medications purportedly provided to Medicare beneficiaries, TRICARE beneficiaries, and privately insured beneficiaries that had not, in fact, been provided as claimed, had not been legitimately prescribed, and had not been legitimately compounded, including through the use of wire communications in interstate commerce, and would receive payment for such claims, in the same manner as had been done on behalf of A to Z Pharmacy.

14.    **ADEMOLA O. ADOBAYO**, Nicholas A. Borgesano, Jr., Edwin Patrick Young, Joseph Degregorio, and their co-conspirators submitted and caused to be submitted false and fraudulent reimbursement claims on behalf of A to Z Pharmacy and the Front Pharmacies in an approximate amount of $633,943,828 for compound medications purportedly provided to Medicare beneficiaries, TRICARE beneficiaries, and privately insured beneficiaries that had not, in fact, been provided as claimed, had not been legitimately prescribed, and had not been legitimately compounded, including through the use of wire communications in interstate commerce, and received approximately $157,428,599 in reimbursement payments.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
### Health Care Fraud
### (18 U.S.C. § 1347)

1.      The General Allegations section of this Indictment is re-alleged and incorporated

by reference as though fully set forth herein.

2.      From in or around October 2012, through in or around December 2015, in Miami-

Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### ADEMOLA O. ADEBAYO,

in connection with the delivery of and payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined by Title 18, United States Code, Section

24(b), that is, Medicare, TRICARE, Medicare drug plan sponsors, an private insurance companies,

including Express Scripts, OptumRX, CVS/Caremark, MedImpact and Catamaran, and to obtain,

by means of materially false and fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of, said health care benefit programs.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for the defendant and his accomplices

to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission

of false and fraudulent claims for reimbursement to Medicare, TRICARE, and private insurers for

purportedly compound prescription medications that were not medically necessary, not eligible for

reimbursement and not provided as claimed; (b) concealing and causing the concealment of the

submission of such false and fraudulent claims; (c) concealing the receipt and transfer of proceeds

from the fraud; and (d) diverting fraud proceeds for their personal use and benefit of the defendant

and his accomplices.

## Manner and Means

4.      Paragraphs 4 through 14 of the Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the manner and means of the scheme and artifice.

## Acts in Execution or Attempted Execution of the Scheme and Artifice

5.      On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **ADEMOLA O. ADEBAYO**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, TRICARE, and private insurers, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in that the defendant submitted and caused the submission of false and fraudulent claims seeking the identified dollar amounts, and representing that certain compound medications had been provided to individuals pursuant to physicians' valid orders and prescriptions:

| Count | Approx. Service Date | Beneficiary | Health Care Benefit Program | First Ingredient in Compound Medication | Approximate Amount Billed | Claim Number |
|-------|------|-------------|------------|------------|------------|------------|
| 2 | 6/18/2014 | G.M. | Express Scripts | Flurbiprofen Powder | $10,084 | 000000000243 |
| 3 | 6/20/2014 | L.C. | Express Scripts | Flurbiprofen Powder | $7,634 | 000000000689 |

| Count | Approx. Service Date | Beneficiary | Health Care Benefit Program | First Ingredient in Compound Medication | Approximate Amount Billed | Claim Number |
|-------|------|------|------|------|------|------|
| 4 | 6/20/2014 | J.O. | Express Scripts | Flurbiprofen Powder | $7,634 | 000000000694 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 5
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

From in or around October 2012, through in or around December 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### ADEMOLA O. ADEBAYO,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with other persons, known and unknown to the Grand Jury:

a.     to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.     to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

14

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Sections 1349 and 1347.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE
### (18 U.S.C. § 982(a)(7))

1.    The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **ADEMOLA O. ADEBAYO**, has an interest.

2.    Upon conviction of a violation of Title 18, United States Code, Section 1347 or 1349, as alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.    Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

4.    The property to be forfeited includes, but is not limited to, the following:

   a.   A forfeiture money judgment of at least $157,428,599;

   b.   Real property located at 22422 Bartholdi Circle, Land O Lakes, Pasco County, Florida, more particularly described as Alsace PB 64 PG088, Lot 7, parcel ID 1826-19-0270-00000-0070;

   c.   One (1) 2001 Ferrari automobile, Vehicle Identification Number ("VIN") ZFFYU51A010123361, seized from the defendant on or about August 9, 2016;

    d.  One (1) 2015 Cadillac sport utility vehicle, VIN 3GYFNDE39FS632853, seized from the defendant on or about August 9, 2016.

    e.  One (1) 2007 Lamborghini automobile, VIN ZHWGU22T67LA05583, seized from the defendant on or about August 9, 2016;

    f.  One (1) 2007 Bentley automobile, VIN SCBDR33WX7C048920, seized from the defendant on or about August 9, 2016;

    g.  One (1) 2015 Cadillac sports utility vehicle, VIN 3GYFNCE33FS567248, registered to the defendant; and

    h.  One (1) 2012 Porsche vehicle, VIN WP0AB2A79CL061341, registered to the defendant.

5.    If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(1), (a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH BEEMSTERBOER
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

TIMOTHY P. LOPER
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICEA

UNITED STATES OF AMERICA

v.

ADEMOLA O. ADEBAYO,

**Defendant.**

_____ /

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New Defendant(s)          Yes _____   No _____
Number of New Defendants        _____
Total number of counts          _____

**Court Division:** (Select One)

| X | Miami | _____ | Key West |
| _____ | FTL | _____ | WPB | _____ | FTP |

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:    (Yes or No)    No
    List language and/or dialect    _____

4.  This case will take    7    days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

(Check only one)                              (Check only one)

| I | 0 to 5 days | | | Petty | |
|---|---|---|---|---|---|
| II | 6 to 10 days | X | | Minor | |
| III | 11 to 20 days | | | Misdem. | |
| IV | 21 to 60 days | | | Felony | X |
| V | 61 days and over | | | | |

6.  Has this case been previously filed in this District Court?   (Yes or No)    No
    If yes:
    Judge: _____   Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)    No
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the District of _____
    Is this a potential death penalty case? (Yes or No)    No

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    Yes _____   No  X

_____

TIMOTHY P. LOPER
DOJ TRIAL ATTORNEY
Court ID No. A5502016

*Penalty Sheet(s) attached

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   **ADEMOLA O. ADEBAYO**

Case No: _____

Count #:   1

  Title 18, United States Code, Section 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:   Twenty (20) years' imprisonment

Counts #:   2 – 4

  Title 18, United States Code, Section 1343

   Wire Fraud

**\*Max Penalty**:    Twenty (20) years' imprisonment as to each count

Count #:   5

   Title 18, United States Code, Section 1956(h)

   Conspiracy to Commit Money Laundering

\*Max Penalty:    Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**